UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPHINE LUCAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:15-cv-01870-SEB-MJD |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Josephine Lucas ("Lucas") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends the decision of the Commissioner be **AFFIRMED**.

**I.     Background**

Lucas filed her application for SSI on June 11, 2012, alleging January 1, 2009 as the onset date of her disability. [R. at 10.] In her disability report filed in conjunction with her application, Lucas listed COPD, asthma, emphysema, bipolar disorder, diverticulitis, diabetes, anxiety, depression, and migraines as her disabling impairments.[1] [R. at 138.] Lucas's application was denied initially on September 12, 2012 and upon reconsideration on December

---

[1] Lucas recited the relevant factual and medical background in her opening brief. [*See* Dkt. 27.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 31.] Because these facts involve Lucas's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate specific facts as needed below.

1

11, 2012. [R. at 10.] Lucas timely requested a hearing on her application. Administrative Law Judge James Norris ("ALJ") held two hearings, one on April 29, 2013 and the other on April 18, 2014. [R. at 27, 36.] The ALJ issued his decision on May 29, 2014, denying Lucas's application for SSI, [R. at 7,] and on September 22, 2015, the Appeals Council denied Lucas's request for review. [R. at 1.] Lucas timely filed her Complaint with this Court on November 24, 2015, which Complaint is now before the Court.

## II.     Legal Standard

To be eligible for SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform her past relevant work or has no past relevant work but she can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional

capacity ("RFC"), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

In his decision, the ALJ first determined Lucas has not engaged in substantial gainful activity since June 11, 2012. [R. at 12.] At step two, the ALJ found Lucas's recurrent hernias and residuals from hernia repair, and an ovarian cyst removal requiring a mesh to be severe impairments, as defined by the Act, because they had a more than minimal effect on Lucas's ability to do basic work activities. [*Id.*] However, at step three the ALJ found Lucas did not have

an impairment that meets or medically equals a Listing by evaluating Listing 1.00, Listing 5.00, and Listing 12.04. [R. at 13-14.]

At step three but before step four, the ALJ, after "careful consideration of the entire record," determined Lucas had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following additional limitations:

> [T]he claimant is able to lift 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk up to 6 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday. Mentally, she is limited to unskilled or simple and repetitive [work] with only occasional contact with the public, coworkers and supervisors. In addition, such work shall not be fast paced with regular expectations that do not vary substantially from day to day.

[R. at 14.] The ALJ found at step four that Lucas has no past relevant work. [R. at 21.] However, considering Lucas's age, education, work experience, and RFC, the ALJ found at step five there were jobs that existed in significant numbers that Lucas could perform. [R. at 21-22.] Specifically, the ALJ found Lucas was able to perform work as an office helper, clothing marker, and mail clerk. [R. at 22.] Based on these findings, the ALJ concluded Lucas is not disabled, as defined by the Social Security Act. [*Id.*]

## IV.   Discussion

Lucas makes three arguments why the ALJ's decision should be reversed. First, she argues the ALJ improperly rejected the opinion of Dr. Lee Besen ("Dr. Besen") that she was disabled for a period of time after her diverticulitis surgery. Next, she argues the ALJ failed to relate any limitations in her ability to lift, stand, and walk in the RFC and hypothetical to the vocational expert. Finally, she argues the ALJ did not properly inform her of her right to counsel and subsequently failed to fully and fairly develop the record.

4

### A. Dr. Besen

First, Lucas argues the ALJ erred by rejecting the testimony of Dr. Besen. Dr. Besen testified Lucas suffered post-operative pain after her diverticulitis surgery in July, 2011, that left her unable to work for a period time. [R. at 39-41.] He further testified the recurrent pain lasted for at least a year. [R. at 41.] However, Dr. Besen also opined that since June 11, 2012, Lucas's filing date, Lucas has not had any medical impairments that equaled a listing and has not had any restrictions on her ability to work. [R. at 42-43.] The ALJ noted Dr. Besen opined Lucas had no physical restrictions, but gave his opinion "little weight," instead limiting Lucas to light exertional work. [R. at 18.] Lucas argues the ALJ erred by failing to consider Dr. Besen's testimony that she was unable to work for a period of time after her surgery.

"An ALJ must consider all medical opinions in the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). However, an ALJ is not required to mention every piece of evidence in the record in writing when making his decision. *Id*. The ALJ explicitly referenced Dr. Besen's opinion in his decision. [R. at 18.] In fact, the ALJ rejected Dr. Besen's opinion that Lucas had no physical restrictions and instead limited Lucas to light exertional work. [*Id.*]

Moreover, the ALJ did not err in failing to explicitly consider Dr. Besen's opinion that Lucas was disabled for a period of time after her surgery. Dr. Besen opined Lucas was disabled **prior** to the date of her filing for benefits. SSI benefits may only be awarded beginning the "month following the month you filed your application." 20 C.F.R. § 416.335. Dr. Besen explicitly opined that after Lucas's filing date, she had no impairments that matched a listing and she did not require any work-related restrictions. [R. at 42-43.] Accordingly, Lucas could not recover benefits from any disability prior to her filing date, and the ALJ properly focused his attention on the evidence of her disability after that date.

### B. RFC Assessment

Next, Lucas argues the ALJ's RFC and hypothetical to the vocational expert "omit all of the limitations due to severe pain caused by the claimant's chronic diverticulosis and diverticulitis limiting her ability to lift, stand and walk." [Dkt. 27 at 13.][2] However, this argument is completely without merit. In the RFC, the ALJ stated Lucas could only "stand and/or walk up to 6 hours in an 8-hour workday" and could only "lift 20 pounds occasionally." [R. at 14.] Moreover, the ALJ's hypothetical to the vocational expert limited Lucas to light work, which requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" and which limits a claimant to "lifting no more than 20 pounds at a time." S.S.R. 83-10. These are clearly limitations on Lucas's ability to lift, stand, and walk. Moreover, Lucas makes no specific argument that the ALJ's limitations were not restrictive enough. [Dkt. 27 at 13.] *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) (undeveloped arguments are waived). Accordingly, the Court finds no error.

### C. Waiver of Right to Counsel

Finally, Lucas argues the ALJ's decision should be reversed because he failed to obtain a proper waiver of her right to obtain counsel. A claimant in a social security case has a statutory right to be represented by counsel at a disability hearing. *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). However, a claimant who is properly informed of this right may waive it. *Id.* In order to ensure a valid waiver, an ALJ must inform a *pro se* claimant of "1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency

---

[2] Lucas also argues the ALJ failed to account for her mental impairments in his RFC assessment. [Dkt. 32 at 5.] However, Lucas first raised this argument in her reply brief, and therefore the argument is waived. *Rives v. Whiteside Sch. Dist. No. 115,* 575 F. App'x 678, 680 (7th Cir. 2014).

arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).

On April 29, 2013, the ALJ held a hearing in which he informed Lucas of her right to obtain counsel. Specifically, the ALJ told Lucas:

> Now you have the right to be represented by somebody if you want to be. You don't have to, but you can be. . . . you can be represented by an attorney or a non-attorney representative, we have both kinds appear here, and they usually work on what's called a contingent fee. Contingent fee is they will be paid usually up to $6,000 of the amount that you're -- that's past due, and so you won't have to come up with any money out of your pocket to get them to represent you. There is also -- I think you got it in the Notice, there's also organizations that represent people here for nothing, for no charge.

[R. at 29.] Lucas also received a notice of hearing that included a form entitled "Your right to representation." [R. at 91-92.] In a section entitled "What a representative can do," the form explains the potential benefits of retaining counsel. [R. at 91.] Specifically, the form explains that counsel can help a claimant obtain medical records to support her claim; get information from her social security file; attend any interviews or hearings; request reconsideration, hearing, or appeals council review; and help the claimant prepare for the hearing and question any witnesses. [*Id.*] The form also explains that counsel may be obtained for a contingency fee or free of charge, and that an attorney's recovery is limited to 25 percent of the claimant's past due benefits. [R. at 91-92.] When Lucas appeared for her second hearing on April 18, 2014, the ALJ specifically asked her whether she wanted to continue with the hearing without representation. [R. at 38.] Lucas responded that she did. [*Id.*]

Lucas argues her waiver was invalid because the ALJ did not properly inform her of the manner in which an attorney could aid her in conducting her proceedings. The Commissioner argues the hearing, in combination with the "Your right to representation" form, properly informed Lucas of her right to counsel. Lucas counters the ALJ was required to orally inform her

7

of her rights at the hearing. The Seventh Circuit has never directly addressed whether an ALJ may advise a social security claimant of his right to obtain counsel in writing, or whether an ALJ is required to do it orally at a hearing. *Wartak v. Colvin*, No. 2:14-CV-401-PRC, 2016 WL 880945, at *4 (N.D. Ind. Mar. 8, 2016). Thus, the district courts in this circuit are divided on the issue. *Compare Abdul Rahim N. Al-Ramadi v. Colvin*, 1:14-CV-327, 2015 WL 7761617, at *5 (N.D. Ind. Dec. 2, 2015), *and Tuggle v. Colvin*, No. 115CV00070SEBDKL, 2016 WL 1237369, at *2 (S.D. Ind. Mar. 30, 2016), *with Baker v. Colvin*, No. 1:12-CV-1814-WTL-MJD, 2014 WL 900921, at *3 (S.D. Ind. Mar. 6, 2014), *and Dillard v. Barnhart*, No. 02 C 6251, 2003 WL 22478775, at *2 (N.D. Ill. Oct. 31, 2003). For the reasons stated below, the Court concludes a written notice can provide sufficient notice for a *pro se* claimant to execute a knowing and intelligent waiver of her right to counsel.

    First, the decisions of other circuit courts support the conclusion that a written notice can be sufficient to effect a valid waiver. The Seventh Circuit in *Thompson* relied upon decisions from the Fifth and Eleventh Circuit Courts of Appeal when fashioning the disclosure requirements for the waiver of counsel. *See Thompson*, 933 F.2d at 584. The Fifth and Eleventh Circuits have the same disclosure requirements for *pro se* social security claimants as the Seventh Circuit does. *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508 (2d Cir. 2009) (rejecting the "three-part test employed . . . by the Fifth, Seventh and Eleventh Circuits."). In applying this standard, both circuits have indicated a written notice may be sufficient. In fact, the Eleventh Circuit case cited by the Seventh Circuit in *Thompson* to support its decision explicitly states a claimant may be adequately informed by a written notice. *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982) ("A claimant cannot knowingly and intelligently waive his statutory right to counsel when he is not adequately informed of it **either in a prehearing notice or at his**

**hearing**.) (emphasis added). Additionally, Fifth Circuit cases applying this standard have also indicated a written notice may be sufficient. *Kyle v. Sullivan*, 983 F.2d 1062 (5th Cir. 1993) ("Accordingly, because Kyle did not receive adequate **written or oral notice** of the 25% cap, he may not have properly waived his right to representation") (emphasis added); *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) (prehearing notice and ALJ's reminder that claimant had right to counsel were sufficient to effect a knowing waiver). Thus, other circuit courts that require the same disclosures as the Seventh Circuit have indicated a written notice may be sufficient.

Moreover, the Seventh Circuit has held in an analogous context that a written notice is sufficient for informing a *pro se* plaintiff of her rights. Specifically, the Seventh Circuit held in *Timms v. Frank* that all *pro se* litigants "are entitled to notice of the consequences of failing to respond to a summary judgment motion." 953 F.2d 281, 285 (7th Cir. 1992). This required notice is consistently served on a *pro se* plaintiff in written form. *See e.g.*, S.D. Ind. L.R. 56-1(k); N.D. Ind. L.R. 56-1(f); N.D. Ill. L.R. 56.2. The Court does not see any reason why a written notice would be sufficient for a *pro se* plaintiff facing a summary judgment motion but not for a *pro se* claimant waiving her right to obtain counsel in a Social Security proceeding.

Finally, permitting disclosure of the required information in a notice is consistent with the general purpose of the disclosure requirement. The Seventh Circuit has explained that a valid waiver requires the claimant to receive "sufficient information to enable him to intelligently decide whether to retain counsel or proceed *pro se*." *Thompson*, 933 F.2d at 584 (internal quotation omitted). A written notice can be as effective as an oral recitation, if not more so, in advising a claimant of her rights.[3] Therefore, a strict requirement of an oral recitation in every

---

[3] This is not to suggest a written notice will always be as effective in advising a claimant of her rights as an oral recitation. For example, if the claimant is illiterate or otherwise unable to understand a written notice, the ALJ may

9

case does not serve the larger goal of assuring a knowing and intelligent waiver of the right to obtain counsel.

In this case, the written notice, in combination with the ALJ's statements at Lucas's first hearing, sufficiently advised Lucas of her right to counsel. The notice specifically advised Lucas how an attorney could help her in the proceedings, the possibility of free counsel or a contingency agreement, and the limitation on attorney's fees to 25 percent of past due benefits. [R. at 91-92.][4] Moreover, the ALJ held a hearing to advise Lucas of her right to counsel, in which he advised her of the possibility of obtaining counsel for free or with a contingency fee. [R. at 29.] The ALJ also referred Lucas to the notice of hearing she had received containing the information mentioned above, and scheduled a second hearing almost a year later to give Lucas time to obtain counsel. [R. at 30, 34.] Finally, at the second hearing the ALJ once again reminded Lucas of her right to obtain counsel and asked her if she still wanted to proceed with the hearing. [R. at 38.] Thus, the Court finds Lucas was adequately informed of her right to obtain counsel, and therefore effectuated a valid waiver of that right.

Even if Lucas had not been properly advised of her right to counsel, remand would still not be required in this case. An invalid waiver of counsel does not require remand of a claim unless the ALJ failed to fully and fairly develop the record. *See Binion*, 13 F.3d at 245-47. While an ALJ has the duty to develop the record in every case, this responsibility "is enhanced when a claimant appears without counsel." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). When a claimant appears *pro se*, the ALJ must "scrupulously and conscientiously probe into, inquire

---

be obligated to orally explain her rights at a hearing. *See Smith v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978). However, the Court need not address this issue since Lucas does not claim she was unable to understand a written notice explaining her rights.

[4] Lucas signed an "acknowledgement of receipt" of the notice of hearing, indicating that she did in fact receive the notice. [R. at 94.]

of, and explore for all the relevant facts." *Id.* (internal quotations omitted). However, a court will only find an ALJ failed to adequately develop the record for a *pro se* claimant if the failure is significant and prejudicial—"[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Id.* (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994).

At the first hearing the ALJ asked Lucas for the name and location of the doctors she had seen recently. [R. at 31-34.] Lucas's medical records were then obtained from those doctors and placed in the record. [*See e.g.*, R. at 429-46.] Furthermore, the ALJ solicited two independent medical experts, one physician and one psychologist, to review the record and testify at Lucas's hearing. [R. at 38-47.] Finally, the ALJ heard testimony from Lucas and her case manager regarding Lucas's impairments. [R. at 47-51.] Thus, the ALJ elicited all the information necessary to make an informed decision on Lucas's claim.

Lucas argues the ALJ failed to properly develop the testimony of Dr. Besen. She argues the ALJ should have asked Dr. Besen to elaborate on his opinion that Lucas was disabled for a period of time after her surgery. However, the ALJ did ask Dr. Besen to elaborate on his opinion by asking him when he believed Lucas was disabled. [R. at 41.] The ALJ then specifically asked Dr. Besen for his opinion regarding Lucas's abilities after she filed her application for SSI. [R. at 42-43.] This line of questioning sufficiently clarified Dr. Besen's opinion regarding Lucas's impairments.

Lucas also claims it was improper for the ALJ to tell Dr. Besen that Lucas could only receive benefits from the date of her filing of her application. However, as discussed above, such is a proper articulation of the law. *See* 20 C.F.R. § 416.335. Moreover, contrary to Lucas's assertion, the ALJ did not say that he would not consider medical evidence concerning Lucas's

11

medical condition prior to her filing date. [R. at 41-42.] Rather, the ALJ informed Dr. Besen that the relevant inquiry for determining whether Lucas is entitled to benefits is whether she was disabled after her filing date. [*Id.*] With that clarification, the ALJ then asked Dr. Besen specifically whether he believed Lucas was limited after her filing date. [R. at 42-43.] Thus, the ALJ properly elicited Dr. Besen's opinion regarding Lucas's impairments.

In sum, the ALJ's statements at the first hearing, in combination with the form provided to Lucas, sufficiently advised Lucas of her right to obtain counsel. Moreover, the ALJ fully and fairly developed the record by obtaining relevant medical records and eliciting the opinions of independent medical experts. Accordingly, the Court finds no error.

## V.    Conclusion

For the aforementioned reasons, the Magistrate Judge recommends the decision of the Commissioner be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  17 JUN 2016

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov